# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | |
|---|---|
| JOSEPH SCHMIDT,<br>Individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>DAVID WELLS, JR. D/B/A TEXAS GOLD SKIDDOS and DAVID WELLS, JR.,<br><br>*Defendants.* | Case No. _____<br><br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Plaintiff Joseph Schmidt ("Schmidt") brings this action individually and on behalf of all others similarly situated (hereinafter "Plaintiff and the Putative Class Members") who worked for David Wells, Jr. d/b/a Texas Gold Skiddos and David Wells, Jr. ("Defendants" or "Texas Gold Skiddos"), and were paid an hourly rate but no overtime from three years preceding the filing of the Original Complaint through the final disposition of this matter, seeking all available relief, including compensation, liquidated damages, attorneys' fees, and costs, pursuant to Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.

Plaintiff's FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

## I.
## OVERVIEW

1. This lawsuit includes a collective action pursuant to the FLSA, 29 U.S.C. §§ 201 *et. seq*., to recover overtime wages and other applicable penalties.

2.      Plaintiff and the Putative Class Members are those similarly situated individuals who worked for Defendants at any time from December 22, 2018, through the final disposition of this matter, and were paid a straight hourly wage for all hours worked, but did not receive overtime for all hours worked over forty (40) in each workweek.

3.      Defendants improperly classified Plaintiff and the Putative Class Members as independent contractors.

4.      Although Plaintiff and the Putative Class Members routinely worked (and work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

5.      The decision by Defendants not to pay overtime compensation to Plaintiff and the Putative Class Members was neither reasonable nor in good faith.

6.      Defendants knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

7.      Plaintiff and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

8.      Plaintiff prays that all other similarly situated individuals (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

## II.
## THE PARTIES

9. Plaintiff Joseph Schmidt worked for Defendants within the relevant time period. Plaintiff Schmidt did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

10. The FLSA Collective Members include those current and former individuals who worked for Defendants at any time in the past three (3) years and were subject to the same illegal pay system under which Plaintiff Schmidt worked and was paid.

11. David Wells, Jr. d/b/a Texas Gold Skiddos ("Texas Gold Skiddos") is a sole proprietorship and may be served with process at: **1617 18th Street, Rockport, Texas 78382**.

12. David Wells, Jr. ("Wells") is the Owner of Texas Gold Skiddos and an employer as defined by 29 U.S.C. § 203(d). Along with Texas Gold Skiddos, Defendant Wells employed and/or jointly employed Plaintiff and the Putative Class Members. Defendant Wells may be served with process at: **1617 18th Street, Rockport, Texas 78382, or wherever he may be found.**

13. Defendants are joint employers pursuant to 29 C.F.R. § 791.2. They have common ownership, oversight and control over Texas Gold Skiddos and Plaintiff and the Putative Class Members. As a result, all Defendants are responsible, both individually and jointly, for compliance with all applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

## III.
## JURISDICTION & VENUE

14. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201 *et. seq.*

---

[1] The written consent of Joseph Schmidt is hereby attached as Exhibit "A."

15. This Court has personal jurisdiction over Defendants because the cause of action arose within this District as a result of Defendants' conduct within this District and Division.

16. Venue is proper in the Southern District of Texas because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

17. Specifically, Texas Gold Skiddos is headquartered in Rockport, Texas, which is located within this District and Division.

18. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

## IV.
## ADDITIONAL FACTS

19. Texas Gold Skiddos is the "newest Portable Toilet Rental and Septic Pumping company in town" that provides portable toilet rentals and a "multitude of other Septic System services such as Septic Pumping and Septic System Installation" to its customers.[2]

20. To provide their services, Defendants employed numerous general laborers that Defendants (mis)classified as independent contractors who were paid an hourly rate only and no overtime—including Plaintiff and Putative Class Members.

### *Defendants are Joint Employers*

21. Defendants are joint employers pursuant to 229 C.F.R. § 791.2.

22. Specifically, Defendant Wells dictated (and continues to dictate) the practice goals and what pressing or tactical items needed to be done to meet the goals of Texas Gold Skiddos and/or their clients.

23. Further, Defendant Wells managed (and continues to manage) key internal relationships to Texas Gold Skiddos—that is, he directed (and continues to direct) the financials of

---

[2] https://www.texasgoldskiddos.com.

Texas Gold Skiddos and he controlled (and continues to control) the pay of Plaintiff and the Putative Class Members who directly or indirectly report to Defendant Wells.

24. Defendant Wells had (and continues to have) the power to hire and fire Plaintiff and the Putative Class Members.

25. Defendant Wells had (and continues to have) the power to supervise and control Plaintiff and the Putative Class Members' work schedules and conditions of their employment.

26. Defendant Wells had (and continues to have) the power to determine Plaintiff and the Putative Class Members' rate and method of payment.

27. Defendant Wells maintained (and continues to maintain) Plaintiff and the Putative Class Members' employment records.

28. As a result, all Defendants are responsible, both individually and jointly, for compliance with all applicable provisions of the FLSA with respect to the entire employment for the workweeks at issue in this case.

### *Plaintiff and the Putative Class Members Are Similarly Situated*

29. Plaintiff Schmidt worked for Defendants as a general laborer in Texas from approximately 2017 through October 2020.

30. Defendants employed other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiff—the Putative Class Members

31. Plaintiff and the Putative Class Members are non-exempt employees who were misclassified as independent contractors and paid straight time for all hours worked, with no overtime compensation.

32. Plaintiff and the Putative Class Members' primary job duties included performing general maintenance of Defendants' equipment and property and performing various tasks to aid the daily operations of Defendants' portable toilet rental and septic system business.

33. While exact job titles may differ, Plaintiff and the Putative Class Members were subjected to the same or similar illegal pay practices for similar work.

34. Plaintiff and the Putative Class Members regularly worked in excess of forty (40) hours per week.

35. Specifically, Plaintiff and the Putative Class Members often worked more than sixty (60) hours each week and were not paid any overtime.

### *Plaintiff and the Putative Class Members Are Employees*

36. Defendants improperly classified Plaintiff and the Putative Class Members as independent contractors.

37. The classification was improper because Plaintiff and the Putative Class Members were not in business for themselves.

38. Instead, they were economically dependent upon Defendants for their work.

39. Plaintiff and the Putative Class Members would conduct their day-to-day activities within mandatory and designed parameters and in accordance with pre-determined plans created by Defendants.

40. Plaintiff and the Putative Class Members' daily and weekly activities were routine and largely governed by standardized plans and procedures created by Defendants.

41. Virtually every job function was predetermined by Defendants, including the tools/equipment to use, the schedule of work, and related work duties.

42. Plaintiff and the Putative Class Members were prohibited from varying their job duties outside of the predetermined parameters.

43. Moreover, Plaintiff and the Putative Class Members' job functions were primarily technical and manual labor in nature, requiring little to no official training, much less a college education or other advanced degree.

44. Indeed, Plaintiff and the Putative Class Members are blue-collar workers.

45. Plaintiff and the Putative Class Members rely on their hands, physical skills, and energy to perform manual and routine labor.

46. Defendants determined the hours Plaintiff and the Putative Class Members worked.

47. Defendants set Plaintiff and the Putative Class Members' pay and controlled the number of days (and hours) they worked.

48. Defendants set all employment-related policies applicable to Plaintiff and the Putative Class Members.

49. Defendants maintained control over pricing and marketing. Defendants also chose equipment and product suppliers.

50. Defendants owned or controlled the equipment, tools, and supplies that Plaintiff and the Putative Class Members used to perform their work.

51. Defendants had the power to hire and fire Plaintiff and the Putative Class Members.

52. Defendants made all personnel and payroll decisions with respect to Plaintiff and the Putative Class Members, including but not limited to, the decision to pay Plaintiff and the Putative Class Members an hourly rate with no overtime pay.

53. Defendants bought or provided tools and equipment that Plaintiff and the Putative Class Members used.

54. Plaintiff and the Putative Class Members did not employ their own workers.

55. Plaintiff and the Putative Class Members worked continuously for Defendants on a permanent full-time basis.

56. The work Plaintiff and the Putative Class Members perform is an integral part of Defendants' business, as Plaintiff and the Putative Class Members perform a service that Defendants are in business to provide.

57. Defendants, instead of Plaintiff and the Putative Class Members, made the large capital investments in vehicles, buildings, equipment, tools, and supplies.

58. Moreover, Defendants paid operating expenses like rent, payroll, marketing, insurance, and bills.

59. Plaintiff and the Putative Class Members do not make any investment in the facilities and/or tools or equipment required to perform their jobs, and do not bear any risk for loss based on any such investment.

60. Plaintiff and the Putative Class Members relied on Defendants for their work.

61. Plaintiff and the Putative Class Members did not market any business or services of their own.

62. Plaintiff and the Putative Class Members worked the hours assigned by Defendants.

63. Plaintiff and the Putative Class Members performed duties assigned by Defendants.

64. Plaintiff and the Putative Class Members worked on projects assigned by Defendants.

65. Plaintiff and the Putative Class Members worked for the benefit of Defendants.

66. Defendants paid Plaintiff and the Putative Class Members on an hourly basis.

67. Plaintiff and the Putative Class Members did not earn a profit based on any business investment of their own.

68. Rather, Plaintiff and the Putative Class Members' only earning opportunity was based on the number of hours they were allowed to work, which was controlled by Defendants.

69. Defendants denied Plaintiff and the Putative Class Members overtime pay as a result of a widely applicable, illegal pay practice.

70. Further, upon information and belief, after Plaintiff Schmidt's termination, the Texas Workforce Commissions found that Plaintiff Schmidt was an ***employee*** of Defendant and entitled to unemployment benefits.

### *Defendants Violated the FLSA*

71. The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

72. Defendants were (and continue to be) aware of their obligation to pay overtime for all hours worked in excess of forty (40) each week but has failed to do so.

73. Plaintiff and the Putative Class Members regularly worked in excess of forty (40) hours per week but never received overtime compensation.

74. Defendants applied this pay practice despite clear and controlling law that states Plaintiff and the Putative Class Members were (and are) Defendants' ***non-exempt*** employees entitled to overtime.

75. Accordingly, Defendants' pay policies and practices blatantly violated (and continue to violate) the FLSA.

### *Defendants Violated 26 U.S.C. § 7434 and Filed Fraudulent Tax Returns*

76. Defendants pay Plaintiff and the Putative Class Members by way of checks issued by Texas Gold Skiddos.

77. Defendants issued 1099s to Plaintiff and the Putative Class Members rather than W-2s.

78. The 1099s are "information returns" as defined under the Internal Revenue Code.

79. The information contained on the 1099s that Defendants issued is fraudulent, in that they falsely claim that Plaintiff and the Putative Class Members are independent contractors.

80. Defendants were (and continue to be) aware that Plaintiff and the Putative Class Members were improperly classified at the time Defendants issued the fraudulent 1099s.

81. Defendants issued 1099s rather than W2s as part of a scheme to avoid tax liability under the Federal Insurance Contributions Act and the Federal Unemployment Tax Act, as well as its worker's compensation obligations.

82. Defendants understood that by issuing such 1099s, Defendants were engaging in fraudulent conduct.

83. Defendants willfully and fraudulent issued such 1099s.

84. Therefore, Defendants' actions in submitting 1099s rather than W-2s for Plaintiff and the Putative Class Members' employment was willful and fraudulent, in violation of 26 U.S.C. § 7434, as Defendants knew that Plaintiff and the Putative Class Members were in fact its employees for whom they were required to submit W-2s.

# V.
# CAUSES OF ACTION

## COUNT ONE
### (Collective Action Alleging FLSA Violations)

**A. FLSA COVERAGE**

85. All previous paragraphs are incorporated as though fully set forth herein.

86. The FLSA Collective is defined as:

**ALL CURRENT AND FORMERY HOURLY WORKERS WHO WORKED FOR TEXAS GOLD SKIDDOS, ANYWHERE IN THE UNITED STATES, AT ANY FROM DECEMBER 22, 2018, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("FLSA Collective" or "FLSA Collective Members").**

87. At all times hereinafter mentioned, Defendants have been employers or joint employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

88. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

89. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the

FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

90. During the respective periods of Plaintiff and the Putative Class Members' employment by Defendants, these individuals provided services for Defendants that involved interstate commerce for the purposes of the FLSA.

91. In performing the operations hereinabove described Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

92. Specifically, Plaintiff and the FLSA Collective Members are (or were) non-exempt employees who worked for Defendants and were engaged in services that were directly essential to the production of goods for Defendants. 29 U.S.C. § 203(j).

93. At all times hereinafter mentioned, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

94. In violating the FLSA, Defendants acted willfully and without a good faith basis and with reckless disregard of applicable federal law.

95. The proposed collective of similarly situated employees—that is, putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 86.

96. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

## B. FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA

97. Defendants violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) per workweek at rates at least one and one-half times the regular rates for which they were employed.

98. Plaintiff and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of Defendants' acts or omissions as described herein; though Defendants are in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

99. Moreover, Defendants knowingly, willfully and in reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

100. Defendants knew or should have known their pay practices were in violation of the FLSA.

101. Defendants are sophisticated parties and employers, and therefore knew (or should have known) their policies were in violation of the FLSA.

102. Plaintiff and the FLSA Collective Members, on the other hand, are (and were) unsophisticated employees who trusted Defendants to pay them in accordance with the law.

103. The decision and practice by Defendants to not pay overtime for all hours worked over forty (40) was neither reasonable nor in good faith.

104. Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid for all hours worked and overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C. FLSA COLLECTIVE ACTION ALLEGATIONS

105. All previous paragraphs are incorporated as though fully set forth herein.

106. Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all of Defendants' employees who have been similarly situated to Plaintiff with regard to the work they performed and the manner in which they have not been paid.

107. Other similarly situated employees of Defendants have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

108. The FLSA Collective is defined in Paragraph 86.

109. Defendants' failure to pay overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Defendants, and does not depend on the personal circumstances of the Plaintiff or the FLSA Collective Members.

110. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

111. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

112. All FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked and the proper amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.

113. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

114. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and Defendants will retain the proceeds of their rampant violations.

115. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

116. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 86 and notice should be promptly sent.

## COUNT TWO
**(Civil Damages for Violations of 26 U.S.C. § 7434, Willful Filing of Fraudulent Tax Returns)**

117. Plaintiff re-alleges and incorporates all previous paragraphs herein.

118. Section 7434 of the Internal Revenue Code provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

119. An IRS form 1099 is an "information return" pursuant to 26 U.S.C. § 6724(d)(1)(A)(vii).

120. Defendants willfully filed fraudulent information returns with respect to payments purported to be made to Plaintiff and the Putative Class Members.

121. By filling the fraudulent 1099s, Defendants substantially reduced their obligation for payment of taxes pursuant to the Federal Insurance Contributions Act and the Federal Unemployment Tax Act.

122. Based on Defendants' willful and fraudulent filing of Plaintiff and the Putative Class Members' 1099s, Defendants are liable to Plaintiff and the Putative Class Members, and Plaintiff and

the Putative Class Members seek damages in an amount equal to the greater of $5,000 or the sum of any actual damages sustained by Plaintiff and the Putative Class Members as a result of such filing, the costs of this action, and reasonable attorneys' fees for the full statutory period of six years. 26 U.S.C. § 7434(b).

123. Plaintiff and the Putative Class Members also seek an order that Defendants take all necessary steps to correct the fraudulent information returns.

# VI.
# RELIEF SOUGHT

124. Plaintiff respectfully prays for judgment against Defendants as follows:

    a. For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective as defined in Paragraph 86 and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative FLSA Collective Members;

    b. For an Order approving the form and content of a notice to be sent to all putative FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

    c. For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

    d. For an Order pursuant to 26 U.S.C. § 7434(b) awarding damages in an amount equal to the greater of $5,000 or the sum of any actual damages sustained by Plaintiff (and those FLSA Collective Members who have joined in the suit) as a result Defendants' willful and fraudulent filing of Plaintiff's (and those FLSA Collective Members who have joined in the suit) 1099, for the full statutory period of six years;

e. For an Order that Defendants take all necessary steps to correct the fraudulent information returns;

f. For an Order awarding the costs and expenses of this action;

g. For an Order awarding attorneys' fees;

h. For an Order awarding post-judgment and moratory interest at the highest rates allowed by law;

i. For an Order awarding Plaintiff Schmidt a service award as permitted by law;

j. For an Order compelling the accounting of the books and records of Defendants, at Defendants' own expense; and

k. For an Order granting such other and further relief as may be necessary and appropriate.

Date: December 22, 2021

Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By: /s/ *Clif Alexander*
**Clif Alexander**
Federal I.D. No. 1138436
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson**
Federal I.D. No. 777114
Texas Bar No. 24045189
austin@a2xlaw.com
**Lauren E. Braddy**
Federal I.D. No. 1122168
Texas Bar No. 24071993
lauren@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys for Plaintiff and Putative Class Members***